**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rachel Krupa, | No. CV-20-00721-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| 5 & Diner N 16th Street LLC, *et al.*, | |
| Defendants. | |

At issue is Plaintiff and Counterdefendant Rachel Krupa's Motion to Dismiss (Doc. 21, MTD) Defendant and Counterclaimant 5 & Diner N. 16th Street, LLC's counterclaims (Doc. 11, Answer and Counterclaims), to which Defendant and Counterclaimant filed a Response (Doc. 31, Resp.). The Court finds the matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons below, the Court will grant Plaintiff's Motion for lack of subject matter jurisdiction.

**I.  BACKGROUND**

Plaintiff and Counterdefendant Rachel Krupa filed the Complaint against Defendants 5 & Diner N. 16th Street, LLC ("5 & Diner"), L.P.M. Holding Company, Inc., and JY Foods, LLC, alleging violations of the Americans with Disabilities Act ("ADA") (Doc. 1, Compl.). 42 U.S.C. 12101, *et seq*. 5 & Diner filed an Answer, which asserted state law counterclaims of Conversion, Breach of Duty of Loyalty, and Civil Conspiracy. Plaintiff moves to dismiss the counterclaims under Fed. R. Civ. P. 12(b)(1), arguing the Court lacks supplemental jurisdiction.

Plaintiff's Complaint alleges that all Defendants are responsible for the conduct at issue but only 5 & Diner asserted the state law counterclaims at issue; therefore, the Court's Order will discuss the allegations as they relate to 5 & Diner.

### A.     Plaintiff and Counterdefendant Rachel Krupa's Allegations

Plaintiff alleges that she started working for Defendant 5 & Diner in or about 2010 and was either a director or manager throughout the entirety of her employment. (Compl. ¶¶ 11-12.) At all relevant times, Plaintiff had a disability that substantially limited a major life activity but was qualified to handle the essential responsibilities of her role. (Compl. ¶¶ 13-14.) In 2016, Plaintiff informed Defendant that her medical provider had suggested work restrictions due to her disability and requested reasonable accommodations pursuant to the ADA. (Compl. ¶¶ 15-16.) Plaintiff alleges that after she requested the accommodations, Defendant hired a non-disabled individual to replace her; however, this individual was subsequently terminated for gross misconduct in the workplace. (Compl. ¶¶ 18-20.) Defendant then demoted Plaintiff from Director to Manager and hired a different non-disabled employee as her replacement. (Compl. ¶¶ 21-22.)

Plaintiff alleges that in early August 2018, she injured herself at work and exacerbated her disability on or around September 18, 2018. (Compl. ¶¶ 23-24.) On September 26, 2018, Mr. Watson, 5 & Diner's owner, informed Plaintiff that he was terminating her employment due to her disability. (Compl. ¶¶ 26-27.) Defendant subsequently hired a non-disabled individual to replace Plaintiff. (Compl. ¶ 28.) Plaintiff alleges that Defendant's actions were discriminatory and retaliatory in violation of the ADA.

### B.     Defendant and Counterclaimant 5 & Diner's Allegations

Defendant alleges a different timeline for Plaintiff's employment with 5 & Diner. It alleges that Plaintiff worked as a server before being promoted twice, first to General Manager in 2004 and then to Regional Manager in November 2009. (Counterclaim ¶¶ 5-7.) 5 & Diner then added multiple locations over the next two years; because of this growth, Defendant promoted Plaintiff to Director of Operations, putting her in charge of the

operations of multiple 5 & Diner locations. (Counterclaim ¶¶ 9-11.) In July 2018, 5 & Diner, which had already closed multiple locations for other reasons, decided to permanently close the Scottsdale location due to substantial fire damage. (Counterclaim ¶¶ 12-13.)

In September 2018, Defendant alleges that it asked Plaintiff to remove various items from the Scottsdale location, including a meat slicer, tables and chairs, cleaning chemicals, popcorn machine, jukeboxes, and other items that were previously used when the 5 & Diner Scottsdale location was open, to a storage unit owned by Defendant. (Counterclaim ¶¶ 14-15.)

On September 28, 2018, Defendant terminated Plaintiff's employment. (Counterclaim ¶ 17.) Subsequently, in October 2018, Defendant discovered that many of the items from the Scottsdale location were not in the storage locker. (Counterclaim ¶ 18.)

In January 2019, it was discovered that Plaintiff and her husband, Mark Krupa, were selling the items on a social media website. (Counterclaim ¶ 19.) Defendant sent a letter on January 8, 2019 to Plaintiff demanding that she return the items allegedly taken from the Scottsdale 5 & Diner, but Plaintiff did not return the requested items. (Counterclaim ¶¶ 20 21.) Defendant alleges that Plaintiff sold the items at issue. (Counterclaim ¶ 22.)

## II. LEGAL STANDARD

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party

asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

## III. ANALYSIS

This Court has federal question jurisdiction over Plaintiff's ADA claims under 28 U.S.C. § 1331. Defendant does not allege either federal question or diversity jurisdiction for its three state law counterclaims; rather, it invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367. (Resp. at 2.) Plaintiff moves to dismiss the counterclaims for lack of subject matter jurisdiction on two bases. First, she argues that the counterclaims do not form "part of the same case or controversy" for the purpose of § 1367(a). (MTD at 3–5.) In the alternative, Plaintiff argues that the Court should decline to exercise supplemental jurisdiction pursuant to § 1367(c)(4).[1] (MTD at 6.)

Under 28 U.S.C. § 1367, federal courts may, in specific instances, maintain supplemental jurisdiction over claims and counterclaims which have no other basis for jurisdiction in federal court. A court has jurisdiction over state law claims "that are so related to claims" brought under the Court's federal question jurisdiction "that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367. In determining whether such a claim forms part of the same "case or controversy," the Court must determine whether the federal claim and the state law claim arise from the same "common nucleus of operative fact." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195 (9th Cir. 2005) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004).

Closely related to the Court's jurisdictional limit under § 1367 is Federal Rule of Civil Procedure 13, which governs the process by which a defendant may allege counterclaims. A counterclaim may be compulsory or permissive. If a counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," it is compulsory and must be raised in response to the opposing party's claim unless an

---

[1] Because the Court finds it lacks supplemental jurisdiction under § 1376(a), it declines to address Plaintiff's contention that there are "other compelling reasons for declining jurisdiction" under § 1376(c)(4).

exception applies. Fed. R. Civ. P. 13(a). Thus, under Rule 13(a), a court must consider whether "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987). All other counterclaims are permissive and need not be raised in the same lawsuit.[2] Fed. R. Civ. P. 13(b).

Prior to the passage of § 1367, courts relied on the distinction between compulsory and permissive counterclaims to determine whether jurisdiction over a counterclaim was proper absent an independent basis for subject matter jurisdiction. *See Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1066 (E.D. Cal. 2005) (collecting cases). Although § 1367 now governs the limits on supplemental jurisdiction, the distinction between permissive and compulsory counterclaims still proves useful. For example, if a counterclaim is compulsory, the Court has supplemental jurisdiction because a counterclaim "which arises out of the same transaction or occurrence" as the plaintiff's claim also necessarily arises from the same "common nucleus of operative fact." *See id.* at 1067 ("The § 1367 test for supplemental jurisdiction is broader than the test for compulsory counterclaims . . . ."). However, because the test for supplemental jurisdiction is broader than the test under Rule 13(a), a counterclaim arising from a different transaction or occurrence may still arise from a "common nucleus of operative fact," thus satisfying the test for jurisdiction under § 1367. *See id.*; *see also Rothman v. Emory Univ.*, 123 F.3d 446, 454 (7th Cir. 1997); *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 212–13 (2d Cir. 2004).

Here, the Court does not have supplemental jurisdiction under § 1367(a) because the Plaintiff's ADA claims and Defendant's state law counterclaims do not arise from a "common nucleus of operative fact." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195 (9th Cir. 2005) Plaintiff's ADA claims depend on her proving that Defendant terminated her employment due to her disability, whereas Defendant's state law counterclaims turn on whether it can prove that Plaintiff unlawfully took possession of equipment at the

---

[2] Thus, a permissive counterclaim is one which does not arise out of the same transaction or occurrence that is the subject matter of the opposing party's claim.

Scottsdale 5 & Diner. Importantly, Defendant was unaware of Plaintiff's alleged conversion of the 5 & Diner equipment when it decided to terminate her employment and thus the alleged conversion played no role in its decision. (Counterclaim ¶¶ 17-18.) The only commonality between Plaintiff's claims and Defendant's counterclaims is that they both relate to Plaintiff's employment with Defendant. Multiple courts have held that employment alone is insufficient to confer supplemental jurisdiction on state law claims. *See, e.g.*, *Poehler v. Fenwick*, No. 15-cv-01161-JWS, 2015 WL 7299804, at *2 (D. Ariz. Nov. 19, 2015) (finding the "existence of an employment relationship" alone insufficient to establish supplemental jurisdiction); *Shearon v. Comfort Tech Mech. Co.*, 2014 WL 1330751, at *3 (E.D.N.Y Mar. 31, 2014) ("the only discernible factual connection or overlap between Plaintiff's federal ADA claim and state-law fraud claim is the background circumstance of Plaintiff's employment relationship. . . . This bare link does not establish supplemental jurisdiction.")

Defendant contends that beyond Plaintiff's employment with 5 & Diner, there are further overlapping facts. First, Defendant argues that Plaintiff's responsibilities as Director of Operations put her in position to allegedly convert Defendant's equipment. While this argument focuses on Plaintiff's responsibilities as an employee as the common link, rather than just the existence of the employment relationship, it has similar problems. Plaintiff's specific responsibilities as Director of Operations are not operative facts in either of the parties' claims.[3] Defendant also contends that the fire and subsequent closure of the Scottsdale 5 & Diner are overlapping operative facts between Plaintiff's claims and Defendant's counterclaims because these events were the bases for Plaintiff's termination as well as the reason that she needed to remove the equipment from the Scottsdale location. Defendant appears to argue that a potential affirmative defense – 5 & Diner had valid reasons to terminate Plaintiff's employment due to the decreasing number of restaurants –

---

[3] Defendant may argue that Plaintiff's responsibilities as Director of Operations are operative facts in its breach of duty of loyalty claim because Plaintiff owed Defendant a duty of loyalty in this role. However, the breach of duty of loyalty claim ultimately turns on whether Plaintiff illegally took control of and refused to return the 5 & Diner equipment. (Counterclaim ¶ 28.)

- 6 -

overlaps with the circumstances that put Plaintiff in a position to commit the alleged conversion. This is insufficient to confer supplemental jurisdiction; Plaintiff's assignment to remove equipment because of the fire is tangential to the operative facts of Defendant's counterclaims.

Even if sufficient overlap existed between the operative facts of Defendant's affirmative defense and its counterclaims, it would not dictate that the Court exercise supplemental jurisdiction. While courts have held that supplemental jurisdiction exists due to the overlap of affirmative defenses and counterclaims, *see e.g. Coleman v. Dish Network LLC*, 2017 WL 6888289 at *4-5 (C.D. Cal. Nov. 22, 2017), many others have declined to confer jurisdiction on this basis. *See e.g. Ader v. SimonMed Imaging Inc.*, 324 F. Supp. 3d 1045, 1051-52 (D. Ariz. 2018);[4] *Lawrence & Assocs., Inc. v. Amdocs Champaign, Inc.*, 2007 WL 390732, at *3 (E.D. Mo. Jan. 31, 2007) ("the issue is whether the counterclaims and the claims, not the potential affirmative defenses to those claims, are so related as to form the same case or controversy.") Importantly, Fed. R. Civ. P. 13 and § 1367 do not discuss the relationship between claims and an affirmative defense as a basis for supplemental jurisdiction.

For these reasons, the Court will grant Plaintiff's Motion to Dismiss Defendant's state law counterclaims for lack of subject matter jurisdiction.

**IT IS ORDERED** granting Plaintiff's Motion to Dismiss (Doc. 21) and dismissing 5 & Diner's counterclaims for lack of subject matter jurisdiction.

Dated this 28th day of December, 2020.

Honorable John J. Tuchi
United States District Judge

---

[4] The *Ader* and *Poehler* courts held there are unique reasons to decline to exercise supplemental jurisdiction over state law counterclaims in FLSA cases, which Defendant correctly notes are absent from cases brought under the ADA. However, these reasons were only relevant to the courts' discussions of "other compelling reasons for declining jurisdiction" based on 1376(c)(4). *Poehler*, 2015 WL 7299804 at *2; *Ader*, 324 F. Supp. at 1052 n. 3. The courts' reasoning for declining to exercise supplemental jurisdiction under § 1367(a) is analogous and relevant here.

- 7 -